UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MARPAU HOLDINGS, INC.

     Plaintiff,                        CIVIL CASE NO.:

vs.

M/V DREAMER, HER ENGINES, TACKLE, ETC.,
*in rem*, FABULOUS DREAM, LLC, and
ANDRES DIEGO LANGESFELD, *in personam,*

     Defendants.

_____/

## COMPLAINT FOR FORECLOSURE OF FIRST PREFERRED SHIP MORTGAGE AND BREACH OF PROMISSORY NOTE AND PERSONAL GUARANTY

     Plaintiff MARPAU HOLDINGS, INC. sues the Defendants M/V DREAMER, Official Number 1249380, her gear and other necessities thereto appertaining and belonging *in rem;* FABULOUS DREAM, LLC, and ANDRES DIEGO LANGESFELD, *in personam* in a cause civil and maritime to enforce a promissory note; to foreclose a first preferred ship mortgage and to obtain a judgment for any deficiency that may exist; to enforce guaranties of the indebtedness reflected in the promissory note; to enforce an assignment of charters, rents , profits, etc; and to foreclose security interests in personal property.

## PARTIES, JURISDICTION, AND VENUE

     1.     Plaintiff MARPAU HOLDINGS, INC. is a Florida Corporation with its principal offices in Miami-Dade, County and doing business in Miami-Dade County, Florida.

     2.     Defendant FABULOUS DREAM, LLC is a Florida limited liability corporation with its principal place of business and offices in Miami-Dade County, Florida.

     3.     Defendant ANDRES DIEGO LANGESFELD is a citizen and resident of

Miami-Dade County, Florida.

4.      Defendant M/V DREAMER, Official Number 1249380, her gear and other necessities thereto appertaining and belonging is a vessel afloat at Miami, Florida.

5.      This Court has jurisdiction over this action under 46 U.S.C. §31325(b) and supplemental jurisdiction under 28 U.S.C. §1367.

6.      Venue is appropriate in this Court as the vessel, with its rigging, tackle, apparel, furniture, engines and all other necessaries thereto appertaining and belonging is now afloat at Miami, Florida and within this district.

## COUNT ONE - PROMISSORY NOTE
### (FABULOUS DREAM, LLC)

Plaintiff re-alleges the allegations in paragraphs 1-6 and further alleges:

7.      FABULOUS DREAM, LLC executed and delivered to Plaintiff a promissory note dated May 29, 2014 in the original principal amount of $150,000.00. (A copy of the note is attached as Exhibit A).

8.      The note matured on July 1, 2015.

9.      The parties entered into an Amended to the First Preferred Ship's Mortgage extending the maturity deadline to June 24, 2015.

10.      On July 20, 2016, the parties entered into a Second Amendment to First Preferred Ship's Mortgage further extending the maturity deadline to November 29, 2016 without a pre-payment penalty. (See attached as Exhibit B),

11.      FABULOUS DREAM, LLC defaulted under the promissory note and Second Amendment to the Preferred Ship's Mortgage by, among other things, failing to make any payments due under the Promissory Note and failing to make payment in full by the date of maturity, November 29, 2016.

12.     On May 11, 2018, undersigned counsel on behalf of Plaintiff, notified FABULOUS DREAM, LLC, and ANDRES DIEGO LANGESFELD, personally as guarantor, of the default and of Plaintiff's intention to accelerate the debt, as permitted under the promissory note, and demanded full re-payment thereof.  (See attached as Exhibit C).

13.     Under the promissory note, FABULOUS DREAM, LLC, and ANDRES DIEGO LANGESFELD owe Plaintiff principal of $150,000.00 plus interest, late charges, costs, and attorneys' fees.

14.     Plaintiff is obligated to pay its attorneys a reasonable fee for their services in this matter.

WHEREFORE, MARPAU HOLDINGS, INC demands judgment against FABULOUS DREAM, LLC, for $150,000.00 plus interest, costs, and attorneys' fees and such other and further relief as in justice it may be entitled to receive and this Court competent to grant.

## COUNT TWO - FORECLOSURE OF FIRST PREFERRED SHIP MORTGAGE
### (FABULOUS DREAM, LLC)

Plaintiff re-alleges the allegation in paragraphs 1-14 and further alleges:

15.     To secure the re-payment of the June 8, 2007 promissory note and all renewals or extensions thereof, FABULOUS DREAM, LLC, in accordance with and pursuant to Chapter 313 of Title 46 of the United States Code, executed and delivered to Plaintiff a first preferred ship mortgage dated July 7, 2014, covering the vessel. (See attached as Exhibit D).

16.     By the terms of the first preferred ship mortgage, FABULOUS DREAM, LLC "mortgage[d] to [Plaintiff] the whole of [the vessel] ... together with all masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronics or equipment and supplies, and all fishing and other attachments and accessories, now part of [the vessel] or used in or on [the vessel] or which may become part of [the vessel] in the future, whether or not removed from [the vessel]" to secure

the payment of the May 29, 2014 promissory note and all extensions thereof.

17.   At the time that FABULOUS DREAM, LLC executed and delivered the first preferred ship mortgage to Plaintiff, and at all times thereafter, the vessel was and has been duly documented under the laws of the United States with her hailing port at Miami, Florida.

18.   The first preferred ship mortgage was duly filed with the United States Coast Guard National Vessel Documentation Center and the record of the United States Coast Guard National Vessel Documentation Center shows the name of the vessel, the names of the respective parties to the first preferred ship mortgage and their interest in the vessel mortgage, and the amount and date of maturity of the July 1, 2015 note as described above. All other requirements of Chapter 313 of 46 U.S.C. were met or caused to be met in order to give the mortgage preferred status.

19.   The first preferred ship mortgage was duly recorded on July 7, 2014, in the Records of the United States Coast Guard National Vessel Documentation Center at Falling Waters, West Virginia.

20.   FABULOUS DREAM, LLC defaulted under the promissory note and extension in the manner described above.

21.   Plaintiff owns and holds the first preferred ship mortgage.

22.   FABULOUS DREAM, LLC holds title to the vessel.

23.   This is an action brought under 46 U.S.C. 31325(b) and Plaintiff asserts that it has the right for the appointment of a receiver to operate the vessel while under seizure under the provisions of 46 U.S.C. 31325(e)(i).

24.   Plaintiff is obligated to pay its attorneys a reasonable fee for their services in this matter.

**WHEREFORE, Plaintiff, MARPAU HOLDINGS, INC,** respectfully requests that: (a) process in due form of law according to the course and practice of this Court in causes of admiralty and maritime jurisdiction may issue against the M/Y DREAMER, her rigging, tackle, apparel, furniture, engines, and all other necessaries thereunto appertaining and belonging, and that all persons claiming any interest in the vessel be cited to appear and answer under oath, all and singular, the matters aforesaid; (b) defendants be cited to appear and answer under oath, all and singular the matters aforesaid; (c) the Court direct the manner in which the actual notice of the commencement of this suit be given to the Master or caretaker of the M/Y DREAMER and to any person, firm or corporation which has recorded a Notice of Claim of any undischarged lien upon the vessel; (d) the First Preferred Ship's Mortgage be declared to be a valid and subsisting lien in the sum of $150,000.00 in principal plus interest, costs, and attorneys' fees and all other amounts required to be dispersed by complainant for the care and preservation of the vessel, any insurance and the cost of any additional insurance on the vessel and all other advances, expenses, attorneys' fees, costs and disbursements of complainant herein with legal interest thereon, such lien to be prior and superior to the interest, liens, or claims of any and all persons, firms or corporations whatsoever, except such persons, firms, or corporations as may hold preferred maritime liens on the vessel; (e) the M/Y DREAMER, her rigging, tackle, apparel, furniture, engines and all other necessaries thereunto appertaining and belonging be condemned and sold to pay the demands and claims aforesaid, with interest and costs and that complainant may become a purchaser at any sale of the mortgaged property; (f) a receiver be appointed in accordance with 46 U.S.C. 31325(e)(i); (g) it be decreed that any and all persons, firms or corporations claiming any interest in the M/Y DREAMER are forever barred and foreclosed of and from all right or equity of redemption of claim of, in or to the mortgaged vessel and every part thereof; (g) Plaintiff recover from defendant FABULOUS DREAM,

LLC. the amount of any deficiency that may be due to Plaintiff after applying the proceeds of the sale of the mortgaged vessel to the amount of the decree herein; and (h) such other and further relief as in justice Plaintiff may be entitled to receive and this Court competent to grant.

## COUNT THREE - SUIT ON GUARANTY
### (ANDRES DIEGO LANGESFELD)

Plaintiff re-alleges the allegations in paragraphs 1-24 and further alleges:

25.   To induce Plaintiff to extend credit to FABULOUS DREAM, LLC, ANDREW DIEGO LANGESFELD executed and delivered to Plaintiff a guaranty of indebtedness under the May 29, 2014 promissory note. (See attached as Exhibit E).

26.   To induce Plaintiff to extend credit to FABULOUS DREAM, LLC, ANDREW DIEGO LANGESFELD executed and delivered to Plaintiff a guaranty of his indebtedness under the promissory note. The guaranty is dated as of May 29, 2014.

27.   Plaintiff owns and holds the guaranty executed in its favor by ANDREW DIEGO LANGESFELD dated May 29, 2014.

28.   FABULOUS DREAM, LLC defaulted under the amended and restated promissory note as described above.

29.   ANDREW DIEGO LANGESFELD defaulted under the guaranty dated Ma 29, 2014 by failing to pay to Plaintiff the indebtedness of FABULOUS DREAM, LLC as agreed.

30.   Under the guaranty, ANDREW DIEGO LANGESFELD owes Plaintiff the principal amount $150,000.00 plus interest, late charges, costs, and attorneys' fees.

**WHEREFORE, MARPAU HOLDINGS, INC.** respectfully requests a judgment against ANDREW DIEGO LANGESFELD on the guaranty in the principal amount of $150,000.00 plus interest, late charges, costs, and attorneys' fees and such other and further relief as in justice it may be entitled to receive and this Court competent to grant.

**Dated this 3rd day of December, 2018.**

KAREN B. PARKER, P.A.
Attorney for Plaintiff
2550 So. Bayshore Drive, Suite 102
Coconut Grove, Florida 33133
Tel.: (305) 400-9149
_Karen B. Parker_____
KAREN B. PARKER, ESQ.
FBN:: 54482
kparker@kbparkerlaw.com

# PROMISSORY NOTE

$150,000.00                                                                          **May 29, 2014**

**FOR VALUE RECEIVED**, the undersigned Fabulous Dream, LLC, a Florida limited liability company promise to pay to the order of **MARPAU HOLDINGS, INC** at **11402 NW 41 Street, Suite 211 #526, Doral, Florida 33178** or at such other address as may be indicated in writing, in the manner hereinafter specified, the principal sum of **One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00)** together with interest from date hereof, at the rate of **Ten** percent ( **10** %) per annum on the balance from time to time remaining unpaid.  The said principal and interest shall be payable in lawful money of the United States of America, on the date(s) and in the following manner:

> This is an installment note payable in monthly installments of $1,250.00 per month, which consists of interest at 10% per annum.  The first installment is due on the 1st day of July, 2014  and  future installments are due on the same day each month thereafter until July 1, 2015, at which time the entire total principal indebtedness together with accrued interest is paid in full.

> All payments shall be first applied to late charges, if any, then to the payment of accrued interest, and the balance remaining, if any, shall be applied to the payment of the principal sum.

> This note may be prepaid without penalty.

This note together  with interest is secured by a first  mortgage of even date herewith on real estate, the terms of which are incorporated herein by reference, made by the makers hereof in favor of the said payee, and shall be construed and enforced according to the laws of the State of Florida.

If default be made in the payment of any installment under this note, and if such default is not made good within 15 days, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same at a later time for the same default or for any subsequent default.

Any payment not received within 10 days of the due date shall include a late charge of 5% of the payment due.  In the event of default in the payment of this note, and if the same is placed in the hands of any attorney for collection, the undersigned hereby agree to pay all costs of collection, including a reasonable attorneys' fee.

The undersigned does not intend or expect to pay nor does the holder hereof intend or expect to charge, accept or collect any interest greater than the highest rate of interest which may be charged under the usury laws of the State of Florida.  Should the acceleration hereof or any changes made hereunder result in the computation of interest in excess of such rate, any and all such excess shall be and the same is hereby waived by the holder hereof, any such excess shall be credited by the holder to the reduction of the principal balance hereof.

In the event any sums due on this note are not paid within  15      days after becoming due the makers and endorsers of this note further agree to waive demand, notice, or payment and protest and in the event suit shall be brought for collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection.  All default payments and costs  hereunder together with the unpaid principal shall bear interest at 18% per annum from default until paid and is to be construed and enforced according to the Laws of the State of Florida, United States of America.  Upon default of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable .  Failure to exercise this option shall not constitute a waiver of right to exercise  the same in the event of subsequent default.

This note is secured by a  first  mortgage of even date herewith   ( See mortgage for additional conditions )
Makers waive demand, presentment for payment, protest, and notice of nonpayment and dishonor.
WITNESS THE HANDS AND SEAL(S) OF THE UNDERSIGNED.

THIS IS A BALLOON MORTGAGE AND THE PRINCIPAL BALANCE DUE UPON  MATURITY  IS  $150,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Fabulous Dream, LLC, a Florida limited liability company - Borrower
By: Andres Diego Langesfeld, Manager

## SECOND AMENDMENT TO FIRST PREFERRED SHIP'S MORTGAGE

THIS SECOND AMENDMENT TO FIRST PREFERRED SHIP'S MORTGAGE, executed this _20_ day of July, 2016, by **FABULOUS DREAM, LLC** (100%), with its principal place of business at **425 West Park Drive, Suite 10, Miami, Florida 33172**, Sole Owner/Mortgagor and **MARPAU HOLDINGS, LLC** (100%), **11402 NW 41 Street, Suite 211, Doral, Florida 33178** the Mortgagee.

WITNESSETH:

WHEREAS, on the 29th day of May, 2014, a First Preferred Ship's Mortgage was executed by **FABULOUS DREAM, LLC**, Sole Owner/Mortgagor, to secure payment to Mortgagee of a certain Promissory Note date May 29, 2014 and further amended on June 24, 2015, and;

WHEREAS, the property, which secures said First Preferred Ship's Mortgage is the vessel **DREAMER**, Official Number **insert #1249380**. This Mortgage was filed on the 21th day of July, 2014 at 1:47 PM and recorded on BOOK 21360000; PAGE 3.

WHEREAS, it is the desire of the parties to enter into this Second Amendment to First Preferred Mortgage to include the following Amendment to the Mortgage dated February 1, 2016; and

NOW THEREFORE, for a good and valuable consideration, each received from the other, the Mortgagor and the Mortgagee agree as follows:

1. The Mortgagor and Mortgagee have agreed to modify that certain "Promissory Note" dated June 24, 2015, to be due and payable on November 29, 2016;

2. Mortgagor and Mortgagee agree to that the Mortgage can be paid prior to November 29, 2016 without penalty;

3. Mortgagor and Mortgagee agree to that there shall be no further extensions or modifications regarding this Mortgage;

4. Except for the Amendments to Second Preferred Ship's Mortgage as provided in Paragraphs 1 thru 3, all of the other terms, provisions, conditions and obligations to be performed by the Mortgagor and the Mortgagee shall remain unchanged and in full force and effect as therein provided.

*[the remainder of the page is intentionally left blank]*

IN WITNESS WHEREOF, the undersigned have set their hands as of the day and year first written above.

**FABULOUS DREAM, LLC** Sole Owner/Mortgagor:

By: _____

 Andres Diego Langesfeld, Managing Member/Mortgagor

**MARPAU HOLDINGS, LLC**, Mortgagee

By: _____

 Sergio L. Lara, President

ACKNOWLEDGMENTS

STATE OF FLORIDA
COUNTY OF MIAMI DADE

        BE IT KNOWN, That on this _____ day of July, 2016, personally appeared before me, who being duly sworn, deposed and said that Andres Diego Langesfeld is the Managing Member of **FABULOUS DREAM, LLC**, the corporation which is described in and executed the within instrument and that he has signed his name to the within instrument and acknowledged the within instrument to be the free act of the said company.

NOTARIAL SEAL
MY COMMISSION EXPIRES:                          _____
                                                 Notary Public

VANESSA M. BERTRAN
Notary Public - State of Florida
Commission # FF 214476
My Comm. Expires May 29, 2019
Bonded through National Notary Assn.

STATE OF FLORIDA
COUNTY OF MIAMI DADE

        BE IT KNOWN, That on this _____ day of July, 2016 personally appeared before me, Sergio L. Lara, who being duly sworn, deposed and said that he is President of **MARPAU HOLDINGS, LLC**, the company which is described in and executed the within instrument and that he has signed his name to the within instrument and acknowledged the within instrument to be the free act and deed of the said company.

NOTARIAL SEAL
MY COMMISSION EXPIRES:                          _____
                                                 Notary Public

VANESSA M. BERTRAN
Notary Public - State of Florida
Commission # FF 214476
My Comm. Expires May 29, 2019
Bonded through National Notary Assn.

THIS SPACE FOR COAST GUARD USE ONLY.

**FIRST PREFERRED SHIP MORTGAGE**

**THIS FIRST PREFERRED SHIP MORTGAGE** is executed on July __7__, 2014 by **Fabulous Dream, LLC** ("100%")("Owner"), whose address is 425 West Park Drive, Suite 10, Miami, FL 33172 in favor of **Marpau Holdings Inc.** (100%) ("Mortgagee"), whose address is 11402 NW 41 Street, Suite 211#526, Doral, Florida 33178.

Owner is the sole owner of the whole of the following Vessel, a documented vessel of the United States, whose records are maintained at the United States Coast Guard, National Vessel Documentation Center, Falling Waters, West Virginia.

| VESSEL | OFFICIAL NUMBER |
|---|---|
| **DREAMER** | **1249380** |

(hereinafter the "Vessel").

Owner is justly indebted to Mortgagee in the principal amount of $150,000.00 as evidenced by its promissory note dated May 29, 2014, and is or may become indebted to Mortgagee under one or more term notes, interim notes, revolver notes, guarantees and other obligations made payable or endorsed by Owner to or for the benefit of Mortgagee, its successors and assigns, and under any extensions or renewals of, amendments to or replacements or substitutions for any of the foregoing (the "Indebtedness"). The maximum amount of direct or contingent obligations that may become secured by this Mortgage is $150,000.00, excluding interest, expenses and fees. For the purpose of securing payment of said debt, plus interest, expenses and fees, and performance of Mortgage covenants, Owner has executed and delivered this Mortgage this date in the amount of $150,000.00 to be preferred under Chapter 313 of Title 46 of the United States Code. Unless otherwise stated herein, or on a Schedule attached hereto, the discharge amount of this Mortgage is the same as the total amount.

In consideration of the premises and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure payment of the principal of and interest on the Indebtedness described above, the obligations of Owner under the instruments evidencing the Indebtedness, and all other sums that may be secured by this Mortgage, and to secure the due performance and observance of each and every one of the covenants, agreements, promises, terms and conditions set forth herein, or in the instruments evidencing the Indebtedness (collectively the "Obligations"), Owner mortgages to Mortgagee, its successors and assigns, on the terms set out below, the whole of the Vessel described above, together with all the engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, gear, furnishings, appliances, fittings and spare and replacement parts, and all other appurtenances thereto appertaining or belonging, whether now owned or hereafter acquired by Owner, whether on board or not on board, and also any and all additions, improvements and replacements hereinafter made by Owner or on Owner's behalf to said Vessel, or any part thereof, and all products and proceeds of all of the foregoing. The total interest in the Vessel owned by Owner is a whole or 100% interest, and the interest in the Vessel mortgaged hereby is the whole or 100% interest.

## 1.00   TERMS AND CONDITIONS

**1.01   Recordation.** Owner will cause this Mortgage to be duly recorded at its own expense, and will comply with all of the provisions of applicable laws and regulations of the United States of America, as amended, in order to establish and maintain this Mortgage as a "preferred mortgage" on the Vessel and upon all renewals, replacements and improvements made by or for the benefit of Owner to the Vessel for the amounts secured hereby. The description of the Vessel, including the data required by law to entitle this Mortgage to preferred status under Chapter 313 of Title 46 of the United States Code, is true and accurate. Owner will execute and record from time to time, at its own expense, such additional instruments as may be necessary or appropriate so that this Mortgage will remain a valid lien on the Vessel, all improvements thereto, and substitute parts incorporated therein, by or for the benefit of the Owner.

**1.02   Restrictions on Sale, etc.** Owner will not sell, mortgage, demise or bareboat charter the Vessel (except for bareboat charters to corporations affiliated with Owner), nor shall the Owner operate the Vessel outside the waters in which the Vessel customarily trades, without the prior written consent of Mortgagee. Any consent by Mortgagee to any one sale, mortgage, demise, bareboat charter, or operation of the Vessel outside its customary navigation limits shall not be construed to be a waiver of this provision with respect to any subsequent proposed sale, mortgage, demise, charter, or operation. Owner may from time to time enter into time charters of the Vessel in the ordinary course of business without the prior consent of Mortgagee provided that the term of such charters (including options) does not exceed one year. Time charters specifying a longer term may not be entered

1

into without Mortgagee's prior written consent.  All charters (whether bareboat, time or otherwise) permitted under this paragraph, shall contain a clause placing the charterer on notice of this mortgage and setting forth the agreement of Charterer that any claim that the Charterer may have against the Owner or the Vessel subject to this Mortgage arising under or as a result of such charter shall be subordinate to the lien of this Mortgage.

**1.03    No Other Liens.**  Neither Owner, any charterer, any operator, the Master of the Vessel, nor any other person has any right, power or authority to create, incur or permit to be placed upon the Vessel any security interest or claim whatsoever, other than (a) this Mortgage or other liens in favor of Mortgagee, (b) liens for salvage, © inchoate liens for current crew's wages, (d) liens covered by valid policies of insurance held by or otherwise in favor of Owner and Mortgagee and meeting or exceeding the minimum limits specified in Paragraph 2.04 below, and (e) inchoate liens not covered by insurance, incurred in the ordinary course of business and not more than thirty (30) days past due.  Any liens or charters to which the Vessel is currently subject, other than liens in favor of Mortgagee, are disclosed as follows (if blank then none):

**1.04    Notice of Mortgage.**  Owner will cause to be placed and kept prominently displayed in a conspicuous place on the Vessel a notice as follows:

**NOTICE OF MORTGAGE**

This Vessel is covered by a Preferred Ship Mortgage to **Marpau Holdings Inc.** under authority of Chapter 313 of Title 46 of the United States Code, as amended, to secure payment to the Mortgagee of certain indebtedness.  A certified copy of the Mortgage is on board the Vessel and is on file at the office of the Owner, where it may be examined, upon demand, by any person having business with the Vessel.  Under the terms of this Mortgage, neither the Owner, any operator, any charterer, any cargo owner, any subcharterer, nor the Master of this Vessel has the right, power or authority to create, incur or permit to exist on this Vessel any lien or encumbrance whatsoever except liens for crew's wages and salvage, and the lien of said Mortgage.

Owner will promptly cause a counterpart of this Mortgage, certified by the United States Coast Guard, to be kept on board the Vessel subject hereto, if required by Chapter 313 of Title 46 of the United States Code, and in the office of Owner, available for inspection, and will exhibit the same and the ships' papers upon demand to any person having business with the Vessel. Owner will take such other appropriate steps from time to time as will give notice to the world that Owner's right, title and interest in and to the Vessel is subject to this Mortgage, and that, except for this Mortgage, Owner has no right, power or authority to suffer or permit any liens or claims against the Vessel.

**2.00    WARRANTIES; AGREEMENTS.**  Owner represents, warrants and agrees that:

**2.01    Organization; Citizenship.**  Owner was duly organized and is now a Limited Liability Company.  Owner is now, and during the life of this Mortgage shall remain, a citizen of the United States.  Owner is duly authorized to mortgage the property conveyed hereby, and has taken all action necessary and required by law for the execution and delivery of this Mortgage.  This Mortgage, and the Obligations (including the Indebtedness) secured hereby, are and will be the valid and enforceable obligations of Owner in accordance with their terms.

**2.02    Ownership; Defense of Claims.**  Owner owns and possesses the Vessel free from any lien or encumbrance whatsoever (other than liens in favor of Mortgagee), except as set forth above.  Owner will warrant and defend title of the Vessel and possession thereof for the benefit of Mortgagee against the claims and demands of all persons, whether such liens are well founded or unfounded, choate or inchoate.

**2.03    Vessel Documentation; Registry or Flag.**  The Vessel is and shall remain documented under the laws of the United States.  Owner will promptly and properly renew the Vessel's documentation with the United States Coast Guard as required and will not allow the Vessel to be used for any purpose other than that for which it is documented with the United States Coast Guard.  Owner will not change the Registry or Flag of the Vessel without the prior written consent of Mortgagee.  Any written consent of Mortgagee to any one change of Registry or Flag shall not be construed to be a waiver of this provision with respect to any subsequent change of Registry or Flag.

**2.04    Insurance on Vessel.**  Owner will cause to be carried and maintained on the Vessel at no cost to Mortgagee at all times during the existence of this Mortgage, (1) full form Hull and Machinery Insurance in an amount not less than the true market value of the Vessel, and in no case, less than 110% of amount due to Mortgagee, (2) Protection and Indemnity Insurance, including coverage for the crew of the Vessel, with such limits as may be required by Mortgagee.  Owner will provide Mortgagee with a policy or certificate which evidences the coverage as required herein.  All insurance shall be placed and kept with insurers reasonably satisfactory to the Mortgagee and any evidence of insurance submitted to Mortgagee shall be signed by the insurance company and by an agent authorized by the company to bind coverage.  The Policy deductibles, if any, shall not exceed that which is customary.  Owner may carry additional insurance as desired.

2

Should the Vessel subject to this Mortgage be navigated outside its customary navigation limits, Owner shall, prior to any such navigation, procure an endorsement to the policies obtained hereunder authorizing such navigation, and procure increased value, war risk and related coverages as may be required by Mortgagee.

While laid up, the Vessel subject to this Mortgage may, in lieu of the insurance specified herein, be insured by Owner or by any Charterer thereof to the same amount under customary port risk policies satisfactory to Mortgagee.

All insurance shall name Mortgagee as additional Assured, as its interest may appear, and shall be payable as hereinafter provided. Such policies shall provide that Mortgagee will receive at least thirty (30) days written notice from the insurance company prior to cancellation or any material alteration in the insurance policy or reduction in coverage which could materially affect the interest of Mortgagee.

Owner shall procure breach of warranty endorsements or a separate Mortgagee's single interest coverage in an amount at all times equal to or greater than the Owner's indebtedness to Mortgagee secured hereby, such that no act or omission of Owner, or any charterer, or breach of any warranty, including breach of any warranty of seaworthiness, whether express or implied, shall operate to forfeit Mortgagee's coverage under the above policies or result in a cancellation of insurance as to Mortgagee. No policy required under this Section 2.04 shall contain any warranty, including any warranty of seaworthiness, the breach of which is not covered by this single interest coverage.

If any insurance referred to herein is not obtained by Owner, Owner will give Mortgagee written notice of such fact, and will endeavor to obtain such insurance. Owner will detain the Vessel in port until such insurance has been obtained. Any failure by Owner to keep the Vessel fully insured as required herein shall constitute an Event of Default hereunder.

In the event of a partial loss of the Vessel subject to this Mortgage, Mortgagee consents that the underwriters may pay directly for repairs, salvage or other charges, or may reimburse the Owner or any Charterer of the Vessel therefor, up to $5,000.00, provided that Owner is not in default hereunder. If Owner is in default hereunder, Mortgagee shall be entitled to receive such insurance money directly from the underwriters. In the event of actual or constructive total loss of the Vessel subject to this Mortgage, all policy proceeds shall be paid directly to Mortgagee and shall be applied first to the payment to Mortgagee of all sums secured hereby, whether then due or not. Any remaining surplus shall be paid to Owner. All policies shall name Mortgagee as loss payee as its interests may appear and shall be paid as provided in this Paragraph.

Owner will keep or cause the aforesaid insurance to be kept valid, and renew, or cause the renewal of same, when necessary, providing Mortgagee with appropriate renewal binders and policy copies once prepared. Owner will cause the premiums and costs thereof to be paid when due and will furnish Mortgagee with evidence satisfactory to Mortgagee that said payments have been made. If Owner shall at any time fail to comply with the foregoing, Mortgagee may, without obligation, procure such insurance and pay any unpaid premiums or may procure other insurance necessary to protect Mortgagee's interest in the Vessel. The costs and expenses thereof, with interest at the highest rate applicable under the Indebtedness upon default (the "Default Rate"), from the date of such expenditure until paid, shall be an additional indebtedness due from Owner to Mortgagee secured by this Mortgage and payable on demand.

Owner will not do any act, nor voluntarily suffer or permit any act to be done, whereby any insurance is or may be suspended, impaired, or defeated. Owner will not suffer or permit the Vessel subject to this Mortgage to engage in any voyage, nor to carry any cargo not permitted under the policies of insurance in effect, without first adding or causing the addition of specific insurance on the Vessel, to the amount herein required, and satisfactory to the Mortgagee, which permits and covers such a voyage or the carriage of such cargo.

**2.05    Compliance with Legal Restrictions.** Owner covenants not knowingly to cause or permit the Vessel subject to this Mortgage to be operated in any manner contrary to the laws of the United States or of any state or country wherein the same is operated.

**2.06    Notice of Seizure.** If the Vessel subject to this Mortgage shall be libeled, attached, seized or otherwise detained under any legal authority, Owner shall immediately proceed to obtain the release or discharge of the Vessel as provided below, and, if Owner has not secured the release or discharge of the Vessel within forty-eight (48) hours, Owner shall immediately notify Mortgagee of the seizure by telephone or facsimile confirmed in writing and delivered to Mortgagee by overnight courier.

**2.07    Maintenance of Vessel.** Owner will exercise due diligence to put, or will cause any charterers of the Vessel to put, the Vessel in good running condition, order and repair, well and sufficiently tackled, appareled, furnished and equipped and make her seaworthy. At all times, Owner will, or will cause any Charterers of the Vessel, at their own expense and risk, to so maintain and preserve the Vessel, ordinary wear and tear excepted; Owner shall keep the Vessel in such condition that she complies with all applicable United States laws, treaties, conventions, rules, regulations and Class Society Certifications and keep on board the Vessel, when required thereby, valid certificates showing compliance therewith.

3

**2.08** **Inspection of Vessel.** Owner will, at all reasonable times, afford Mortgagee and its representatives, or cause any Charterers to afford Mortgagee and its representatives, complete access to the Vessel for the purpose of inspecting the same.

**2.09** **Payment of Taxes, etc.** Owner will pay and discharge, from time to time, or cause to be paid and discharged, all claims, taxes, assessments, governmental charges, fines and penalties lawfully imposed upon, or which may become a lien or charge upon the Vessel. Nothing herein shall require the payment of any such claim, tax assessment, charge, fine or penalty so long as the same may be contested in good faith and by appropriate legal proceedings. In such event Owner shall take, or cause to be taken, whatever steps may be required to release or discharge the Vessel subject to this Mortgage from any arrest or seizure which may interfere with the regular use of the Vessel.

**2.10** **Compliance by Charterer.** If any of the above-described duties, covenants, promises, conditions, agreements or terms shall have been delegated by Owner to any charterer in connection with any charter permitted hereunder, Owner will also cause charterer to comply fully therewith.

**3.00** **EVENTS OF DEFAULT.** The following are Events of Default hereunder:

**3.01** Failure to pay any installment of principal or interest under the Indebtedness, or the principal or interest scheduled under any other indebtedness of Owner to Mortgagee, within ten (10) days of the date such payment is due;

**3.02** Failure to maintain in full force and effect the insurance required in Paragraph 2.04 of this Mortgage;

**3.03** Default in the performance or observance by Owner of any covenant, warranty, promise, condition, agreement or term contained herein, in any commitment letter, or in any loan agreement, mortgage, security agreement or amendment or supplement thereof evidencing the Obligations or securing the Indebtedness, or other indebtedness of Owner to Mortgagee, or any other default by Owner or any other Obligor under any Obligation secured hereby, should such default remain uncured after ten (10) days from the occurrence thereof;

**3.04** Any representation, warranty, statement, certificate, schedule or report made herein or furnished hereunder, or in any loan agreement, note, ship mortgage, assignment or security agreement, executed or endorsed by Owner in favor of Mortgagee, shall prove to have been false or misleading in any material respect when made, and such default is not remedied within thirty (30) days after written notice to Owner by Mortgagee;

**3.05** Any evidence of debt to third persons for which Owner is liable as principal, guarantor or otherwise shall be in default (after any applicable period of cure) or become due by acceleration or otherwise, and shall not promptly be paid or timely contested in appropriate proceedings;

**3.06** Any proceeds from the sale, loss, requisition, seizure or forfeiture of, or from any insurance carried on or in respect of, the Vessel subject to this Mortgage which is otherwise payable to Mortgagee shall not have been received by Mortgagee for distribution in accordance with the provisions hereof within ten (10) days after the same are received by Owner;

**3.07** Owner shall (I) apply for or consent to the appointment of or the taking of possession by a receiver, custodian, trustee or liquidator of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay, or generally not be paying, its debts as they become due, (iii) make a general assignment for the benefit of creditors, (iv) commence a voluntary action under the Federal Bankruptcy Code (as now or hereafter in effect), (v) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts, (vi) fail to controvert in a timely or appropriate manner or acquiesce in writing to any petition filed against the Owner in an involuntary action under such Bankruptcy Code or (vii) take any action for the purpose of effecting any of the foregoing;

**3.08** A proceeding or case shall be commenced without the consent of the Owner in any court of competent jurisdiction seeking (I) the liquidation, reorganization, dissolution, wind-up or composition or readjustment of debts of Owner, (ii) the appointment of a receiver, trustee, custodian, liquidator or the like for Owner or of all or a substantial part of its assets or (iii) similar relief with respect to Owner under any law relating to bankruptcy, insolvency, reorganization, winding-up or composition or adjustment of debts; and such proceeding or case continues undismissed, or an order, judgment or decree approving or ordering any of the foregoing is entered and continues unstayed for a period of sixty (60) days, or any order for relief against the Owner is entered in any involuntary case under the Bankruptcy Code;

**3.09** Any Guarantor or other Obligor under the Obligations secured hereby shall take any action as outlined in Paragraph (3.07) above or shall have instituted against such person any action as outlined in Paragraph (3.08) above.

**4.00** **RIGHTS AND REMEDIES ON DEFAULT.** If any such Event of Default occurs and is continuing, Mortgagee may, at its option, do any one or more of the following:

**4.01**     Declare the Indebtedness, the Obligations and all other indebtedness of Owner or any other Obligor to Mortgagee, in principal and interest, forthwith due and payable.

**4.02**     Enforce Mortgagee's rights by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of, or for an injunction against a violation of, any term hereof, of the instruments evidencing the Indebtedness or the Obligations, or of any loan agreement, note, ship mortgage, assignment or security agreement executed or endorsed by Owner in favor of Mortgagee, or in the aid of the exercise of any power granted by this Mortgage, any said loan agreement, note, ship mortgage, assignment or security agreement, or by law.

**4.03**     Exercise all of the rights and remedies of foreclosure, and otherwise, given to Mortgagees by laws of the United States of America or other jurisdiction, including, but not limited to, the law of any jurisdiction in which the Vessel subject to this Mortgage may be found.

**4.04**     Take and enter into possession of the Vessel subject to this Mortgage at any time, wherever the same may be, without legal process and without being responsible for loss or damage. Owner or any other person in possession of the Vessel shall forthwith, upon demand of Mortgagee, surrender possession of the Vessel to Mortgagee. Mortgagee may, without being responsible for loss or damage, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage; make any necessary repairs on the Vessel; and demand, collect and retain all hire, freights, earnings, issues, revenues, income, profits, return of premiums, salvage awards or recoveries, recoveries in general average, and all other sums due or to become due in respect of the Vessel or in respect of any insurance thereon from any person whomsoever.

**4.05**     Take and enter into possession of the Vessel subject to this Mortgage, at any time, wherever the same may be, without legal process, and if it seems desirable to Mortgagee and without being responsible for loss or damage, sell the Vessel, at any place and at such time as Mortgagee may specify and in such manner as Mortgagee may deem advisable, free from any claim by Owner in admiralty, in equity, at law or by statute, after first giving Owner notice thereof ten (10) days in advance of the time and place of sale.

**4.06**     Exercise all rights, privileges and remedies in foreclosure or otherwise given Mortgagee by this Mortgage, or by any other instrument evidencing the Indebtedness or the Obligations or securing performance thereof, as well as such other rights, privileges and remedies granted by applicable law.

**4.07**     Collect, receive, compromise and sue for, in the name of Mortgagee or Owner all earned freights, charter hire, accounts, issues, revenues, income, profits or other earnings arising out of, or in any way connected with, the use or operation of the Vessel.

## 5.00     OTHER AGREEMENTS ON DEFAULT OR OTHERWISE

**5.01     Sale of Vessel.** Any sale of the Vessel made pursuant to this Mortgage, whether under the power of sale hereby granted or any judicial proceedings, shall operate to divest all right, title and interest of any nature whatsoever of Owner therein and thereto, and shall bar Owner, its successors and assigns, and all persons claiming by, through, or under them. No purchaser shall be bound to inquire whether notice has been given, or whether any default has occurred, or as to the propriety of the sale, or as to the application of the proceeds thereof.

**5.02     Attorney-in-Fact.** In the event that Owner or any other Obligor shall default in the payment of the principal, premium, if any, or interest on the Indebtedness or otherwise default under the Obligations, or upon the occurrence of any other Event of Default hereunder, or under any other loan agreement, mortgage, guaranty or security agreement securing the Indebtedness or the Obligations, or under any other obligation of Owner to Mortgagee, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner: (1) to execute, deliver and to make, in the name of and on behalf of Owner, a good conveyance of title to the Vessel to any purchaser (Owner will, if and when required by Mortgagee, execute such form of conveyance of title to the Vessel as Mortgagee may direct; Owner agrees that this requirement is subject to a suit for specific performance hereof); (2) to demand, collect, receive, compromise and sue for, in the name of Owner, all freight, hire, earnings, issues, revenues, income and profits of the Vessel, and all amounts due from underwriters under any insurance thereon as payment of losses, or as return premiums, or otherwise, salvage awards and recoveries, recoveries in general average or otherwise, and all other sums thereafter due or to become due in respect of the Vessel, or in respect of any insurance thereon, from any person whomsoever to the extent of Owner's interest therein, which said interest is hereby assigned to, and a security interest therein granted in favor of, Mortgagee; (3) to make, give and execute in the name of the Owner acquittances, receipts, releases or other discharges for the same, whether under seal or otherwise; (4) to endorse and accept, in the name of Owner, all checks, notes, drafts, warrants, agreements and other instruments in writing with respect to the foregoing. Owner authorizes the Mortgagee to take any such action or exercise any power enumerated in this Paragraph, or otherwise provided for in this Mortgage or under applicable law.

**5.03     Arrest of Vessel.** In the event that the Vessel subject to this Mortgage shall be arrested or detained by a Marshal or other officer of any court of law, equity or admiralty jurisdiction in any country or nation of the world, or by any government or other authority and shall not be released from arrest or detention within fifteen (15) days from the date of Owner's receipt of notice of any such arrest or detention, or within such lesser time as may be necessary under applicable law to avoid prejudice to Mortgagee's rights hereunder, Owner irrevocably appoints Mortgagee the attorney-in-fact of Owner and authorizes and empowers Mortgagee, or any appointee or appointees of Mortgagee, in the name of Owner, its successor or assigns, to apply for and receive or take possession of the Vessel with all the rights and powers that Owner, its successors or assigns, might have, possess or exercise in any such event. Owner authorizes and empowers Mortgagee, its appointees, or any of them, to appear in the name of Owner, its successors and assigns, in any court of any country or nation of the world where a suit is pending against the Vessel because of, or on account of, any alleged lien against the Vessel from which the Vessel has not been released, and to take such proceedings as to them may seem proper towards the defense of such suit and the purchase or discharge of such lien. All expenditures incurred for the purpose of such defense, purchase or discharge, with interest per annum at the Default Rate, from the date of any such expenditure until paid, shall be an additional indebtedness which shall be secured by this Mortgage, payable on demand.

**5.04     Relationship of Owner and Mortgagee.** In case Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Mortgagee, then and in every such case Owner and Mortgagee shall be restored to their former positions and rights hereunder with respect to the property subject or intended to be subject to this Mortgage, and all rights, powers and remedies of Mortgagee shall continue as if no such proceedings had been taken.

**5.05     Cost of Collection; Attorneys' Fees.** Whether or not litigation is commenced, Owner promises to pay all of Mortgagee's costs of collecting overdue amounts, including, without limitation, a reasonable hourly rate for collection personnel, whether employed in-house or on a contract basis, overhead costs, as reasonably allocated to the collection effort, and all other expenses actually incurred, including all attorney fees and related expenses incurred by Mortgagee. If either party hereto commences litigation to enforce or construe any term of this Mortgage, or of any instruments evidencing the Indebtedness or the Obligations, or to collect any amounts due hereunder or thereunder, the losing party will pay to the prevailing party such additional sums as the court may adjudge reasonable as attorneys' fees and costs in the litigation or any appeal or review therefrom.

**5.06     Appointment of Receiver or Substitute Custodian.** At Mortgagee's option, in any suit to foreclose the lien of this Mortgage, Mortgagee shall be entitled as a matter of right, and not as a matter of discretion, to the appointment of a receiver or substitute custodian of the Vessel. Any receiver so appointed shall have full rights and powers to use and operate the Vessel, and to a decree ordering and directing the sale and disposal thereof. In any such suit, Owner will enter a voluntary appearance. Mortgagee may bid and become a purchaser at such sale, and, in such event, shall be entitled to credit on the purchase price any and all sums due to Mortgagee hereunder. Any custodian so appointed shall have full rights and powers to retain possession of the Vessel, and to provide for their maintenance and safe-keeping prior to sale, in lieu of custody by the U.S. Marshal, other governmental authority, or their designees. Owner hereby designates Mortgagee, or any employee, agent, or other person named by Mortgagee at the time seizure of the Vessel subject to this Mortgage is effected, or at the commencement of any suit, to serve as receiver or custodian of the Vessel as the case may be.

**5.07     Defense of Claims Against Vessel.** In the event Owner fails promptly to defend any claim against the Vessel, Owner authorizes Mortgagee, or its appointees, at its option to appear in the name of Owner, its successors and assigns, in any court where a suit is pending against the Vessel because of any alleged lien against the Vessel and to take such action as to them may seem proper towards the defense of such suit and the discharge of such lien. All moneys expended by them for the purpose of such defense and/or discharge, with interest per annum at the Default Rate from the date of such expenditure until paid, shall be an additional Indebtedness due from Owner to Mortgagee secured by this Mortgage, payable on demand.

**5.08     Mortgagee's Right to Cure Owner's Defaults.** If Owner fails to pay any tax, claim, lien, or encumbrance that it is required to pay or discharge under the terms of this Mortgage, or to pay any insurance premium as aforesaid, or to maintain the Vessel as aforesaid, or commits or permits waste, or fails to perform or observe any term, agreement, provision, covenant, or condition of this Mortgage, Mortgagee may pay such claim, lien, encumbrance, tax, assessment, or premium, with right of subrogation thereunder, may make any repairs and take any steps it deems advisable to prevent or cure such waste, and may appear in any action or proceeding with respect to any of the foregoing and retain counsel therein, and take such action therein as Mortgagee deems advisable. For any of such purposes, Mortgagee may advance any sums of money it deems necessary. Mortgagor will pay to Mortgagee, immediately upon demand, all sums of money advanced by Mortgagee pursuant to this paragraph and until paid, all such sums, together with interest at the Default Rate from the date of such advance, shall be an additional Indebtedness secured hereby. Mortgagee's rights under this paragraph shall be exercisable in Mortgagee's sole discretion. In no event shall this Mortgage be construed to obligate Mortgagee to exercise any right of cure provided in this paragraph or elsewhere herein; nor shall Mortgagee be liable to Owner or any other person for any failure or refusal of Mortgagee to exercise any such right.

**5.09    Powers and Remedies Cumulative.**  Each power or remedy herein given to Mortgagee, or granted to Mortgagee under any instruments evidencing the Indebtedness or the Obligations, or any additional mortgage or security agreement securing same, shall be cumulative and in addition to every other power or remedy specifically given in this Mortgage or existing in admiralty, in equity, at law or by statute.  Each power or remedy may be exercised as often as deemed expedient by Mortgagee.  No delay or omission by Mortgagee in the exercise of any power or remedy shall impair any such power or remedy, or shall be construed to be a waiver of any Event of Default.  The acceptance by Mortgagee of any security or of any payment on account of the Indebtedness and other Obligations hereby secured shall not be a waiver of any right to take advantage of any further Event of Default or of any past Event of Default not completely cured thereby.

**5.10    Application of Proceeds.**  The gross proceeds of the sale of the Vessel and the gross earnings of any charter operation or other use of the Vessel by Mortgagee under any of the powers herein specified, and any and all other monies received by Mortgagee pursuant to or under the terms of this Mortgage, or in any proceedings hereunder, the application of which has not elsewhere herein been specifically provided for, shall be held by Mortgagee and shall be applied as follows:

First:  To the payment of all expenses and charges incurred by Mortgagee in the exercise of its rights and remedies hereunder, including the expenses of any sale, the expenses of any retaking, attorneys' fees, court costs, and any other expenses or advances made or incurred by Mortgagee in the protection of its rights or the pursuit of its remedies hereunder, and to provide adequate indemnity to Mortgagee against liens claiming priority over or equality with this Mortgage with interest per annum at the Default Rate, from the date of any such expense or charge incurred;

Second:  To the payment of the Indebtedness together with interest thereon;

Third:  To the payment of all other sums secured hereby; and

Fourth:  To the payment of any surplus thereafter remaining to Owner, subject to setoff in favor of Mortgagee for any other indebtedness of Owner.

In the event that the proceeds are insufficient to pay the amounts specified in subclauses "First", "Second" and "Third" above, Mortgagee shall be entitled to collect the balance from Owner or any other person liable therefor.


## 6.00    MISCELLANEOUS

**6.01    Quiet Enjoyment.**  Until the occurrence of one or more of the Events of Default described above, Owner shall be permitted to retain actual possession and use of the Vessel.

**6.02    Consent of Mortgagee.**  Whenever pursuant to this Mortgage the consent of Mortgagee is required, that consent shall not be unreasonably withheld.

**6.03    Notice.**  All notices, requests and other communications to any party hereunder shall be in writing and given to such party at the address, specified above, or at such other address as such party may from time to time designate as its address for the receipt of notices.

**6.04    Successors and Assigns.**  All covenants, warranties, promises, conditions, agreements and terms herein shall bind Owner, its successors and assigns, and shall inure to the benefit of Mortgagee, its successors and assigns.  In the event of any assignment of this Mortgage, the term "Mortgagee," as used in this Mortgage, shall mean any such assignee.

**6.05    Savings Clause.**  In the event that any provision of this Mortgage is held to be invalid, such event shall not affect, in any respect whatsoever, the validity of the remainder of this Mortgage, and the remainder shall be reasonably construed without the invalid provision so as to carry out the intent of the parties hereto.

**6.06    Separate Discharge.**  Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a "vessel" as the term is used in Chapter 313 of Title 46 of the United States Code; and although it is not intended that this Mortgage include any property other than the Vessel, if any determination is made at any time that for any reason this Mortgage does include any property other than a "vessel" within the meaning of the said Act, then such property may be separately discharged from the lien of this Mortgage by the payment of .01% of the principal amount of the Obligations then outstanding.

**6.07    Governing Law.**  The construction and enforcement of this Mortgage shall be governed by federal law, including without limitation, Chapter 313 of Title 46 of the United States Code and general maritime law, to the extent applicable, and otherwise by the internal laws of the State/Commonwealth of <u>Florida</u> without regard to its conflicts of laws rules.

**6.08   Future Advances.**  This Mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all renewals, extensions or rate modifications of the above described note, and said Mortgage shall remain in full force and effect to secure all renewals, extensions or rate modifications of the above described note.

**IN WITNESS WHEREOF,** the undersigned has executed this instrument on this the ___7___ day of _July,_ 2014.

FABULOUS DREAM, LLC Owner/Mortgagor

By: ✓ _[signature]_

Andres Diego Langesfeld, Managing Member/Mortgagor

## ACKNOWLEDGMENT

STATE OF _Florida_      COUNTY OF _Miami Dade_

Before the undersigned Notary Public, the foregoing instrument was acknowledged this ___7___ day of _July,_ 2014 by Andres Diego Langesfeld, as Managing Member of Fabulous Dream, LLC, the Limited Liability Company which is described in and executed the within instrument to be the free act and deed of the said Limited Liability Company.

IN TESTIMONY WHEREOF, I have hereto set my hand and seal this ___7___ day of _July,_ 2014.

Notary Seal

Notary Public _[signature]_

Print Name _Vanessa M. Bertran_

My Commission expires: _____

Commission # _____



VANESSA M. BERTRAN
MY COMMISSION # EE 065166
EXPIRES: May 29, 2015
Bonded Thru Notary Public Underwriters

Identification Produced:

VANESSA M. BERTRAN
MY COMMISSION # EE 065166
EXPIRES: May 29, 2015
Bonded Thru Notary Public Underwriters

8

# KAREN B. PARKER, P.A.

2550 So. Bayshore Drive, Suite 102
Coconut Grove, Florida  33133
(305) 400-9149 or (305) 343-8339
kparker@kbparkerlaw.com

---

May 11, 2018

Andres D. Langesfeld
Fabulous Dream, LLC.
425 W. Park Drive, Unit 10
Miami, Florida  33172

## NOTICE OF DEFAULT AND ACCELERATION

Re:    M/Y Dreamer – Hull Number:  1249380

Dear Mr. Langesfeld:

Please be advised that I have been retained to represent the Mortgagee, Marpau Holdings, Inc., the creditor to whom the debt is owed by Fabulous Dream, LLC and Andres D. Langesfeld under a Personal Guaranty, which is obligated under the following Promissory Note and Mortgage:

**Interest Only Promissory Note       $150,000.00   7/7/2014 – 11/29/2016**

Payment was due November 29, 2016 in accordance with the Second amendment to First Preferred Ship's Mortgage.  You are in Default of the Promissory Note and Mortgage.

Please be advised that formal demand is hereby made upon Fabulous Dream, LLC and Andres D. Langesfeld under a Personal Guaranty wherein **THE PROMISSORY NOTE IS HEREBY ACCELERATED AND IS IMMEDIATELY FULLY DUE AND PAYABLE**. The total **principal amount of $150,000.00** is owed, exclusive of interest, which is being charged at the default rate of interest of 18% since November, 2016[1], the date of maturity of the Interest Only Promissory Note, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your certified funds, in which event we will inform you before depositing the check for collection.

---

[1] As of the date of this Notice of Default and Acceleration, Interest has accumulated in the amount of $40,500.00.

Andres D. Langesfeld
Fabulous Dream, LLC.
May 11, 2018
Page 2 of 2

**FAILURE TO PAY THE AMOUNT DUE AND OWING ON THE PROMISSORY NOTE AS DEMANDED MAT RESULT IN THE PURSUIT OF ALL REMEDIES AVAILABLE TO MORTGAGEE, INCLUDING, BUT NOT LIMITED TO, ARREST OF THE VESSEL, FORECLOSURE OF THE FIRST PREFERRED MORTGAGE PURSUANT TO THE TERMS OF THE MORTGAGE AND FLORIDA LAW AND DEFICIENCY JUDGMENT.**

      The law does not require me (the debt collector) to wait before bringing a foreclosure action.  Once a lawsuit is commenced, all judicial remedies will be zealously pursued and attorney fees and costs, wherein you will be responsible for, in whole or in part, will be incurred.

      Mr. Langesfeld, Mr. Lara is willing to work out a financial solution with you short of bringing an action to arrest and foreclose on the Note and Mortgage and pursue a very likely deficiency judgment. That being said, please contact me upon receipt of this correspondence so that we can coordinate a meeting to discuss this matter further.  We look forward to hearing from you.

      PLEASE GOVERN YOURSELF ACCORDINGLY.

           Sincerely,

           *Karen B. Parker*

           KAREN B. PARKER, ESQ.

Enclosure
cc:  Sergio Lara

This instrument was prepared by:
Vanessa M, Bertran, Esquire
250 Catalonia Avenue, Suite 304
Coral Gables, Florida 33134

<u>GUARANTY</u>

This guaranty ("Guaranty"), dated this 29st day of May, 2014, is executed by **Andres Diego Langesfeld, a single man,** in favor of **MARPAU HOLDINGS, INC,** its successors and or assigns, ("Lender"), in order to induce Lender to tender funds for the use of the purchase and maintenance of a vessel owned by **Fabulous Dream, LLC,** ("Borrower"), and to accept as substitute collateral that certain promissory note dated May 29, 2014, in the amount of ONE HUNDRED FIFTY THOUSAND AND 00/100 ($150,000.00) Dollars.

1.      For valuable consideration, the receipt of which is hereby acknowledged, Guarantors, individually and collectively, irrevocably and unconditionally guaranty and promise to pay Lender, or order on demand in lawful money of the United States of America, any and all indebtedness of Borrower to Lender arising from or in connection with the Note referred to hereinabove, and all documents executed in connection therewith, signed by the undersigned guarantor, which remains in full force and effect until paid in full. The word Indebtedness as used herein includes the indebtedness evidenced by the Note dated May 29, 2014 and any and all existing and future obligations and liabilities of the Borrower related to said Note.

2.      Guarantor acknowledges that the unpaid present indebtedness is being secured by the note dated May 29, 2014, which will be secured by a mortgage on the vessel named "Dreamer" and authorize holder of said mortgage and note without notice or demand to foreclose said mortgage and seek any other legal remedies at the option of the Lender. No such action shall release or limit the liability of the Guarantor. Guarantor waives any right to receive notice of foreclosure. This is an unconditional and irrevocable waiver of any rights, and defenses Guarantor may have until the indebtedness has been paid, but shall not affect the rights of Guarantor as to actions against Fabulous Dream, LLC.

Witness our hands and seals this 29st day of May, 2014.

Signed, sealed and delivered in
the presence of:

_____                    _____
Print Name Vanessam . Bertran                    Andres Diego Langesfeld

_____
Print Name Julia A Menyan

STATE OF FLORIDA
COUNTY OF MIAMI- DADE

I HEREBY CERTIFY that on this ____29____ day of May, 2014, before me an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared Andres Diego Langesfeld, who (mark "x" one):

[    ] is personally known to me
[ ✓ ] produced as identification   drivers license

and who executed the foregoing instrument and they acknowledged before me that they executed same.